UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

GEORGE GIUSTI              :
                          :
        v.                :        C.A. No. 11-360ML
                          :
MICHAEL J. ASTRUE         :
Commissioner of the Social Security  :
Administration            :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on August 10, 2011 seeking to reverse the decision of the Commissioner. On June 3, 2012, Plaintiff filed a Motion to Reverse the Decision of the Commissioner. (Document No. 8). On July 17, 2012, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 9).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse the Decision of the Commissioner (Document No. 8) be DENIED.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for DIB on February 18, 2009 alleging disability since April 1, 2005.  (Tr. 108-109).  Plaintiff's date last insured for DIB was June 30, 2008.  (Tr. 108, 129).  The application was denied initially on June 16, 2009 (Tr. 41-43) and on reconsideration on December 24, 2009.  (Tr. 45-47).  On February 6, 2010, Plaintiff requested an administrative hearing.  (Tr. 48-49).  On January 3, 2011, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ") at which Plaintiff, represented by counsel, a vocational expert ("VE") and medical expert ("ME") appeared and testified.  (Tr. 16-36).  The ALJ issued an unfavorable decision to Plaintiff on January 6, 2011.  (Tr. 6-15).  On April 8, 2011, the Decision Review Board affirmed the ALJ's decision.  (Tr. 3-5).  Plaintiff apparently did not receive a copy of the Decision Review Board's notice, and, on June 7, 2011, an extension of time to file a civil action was granted.  (Tr. 1-2).  A timely appeal was then filed with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred at Step 2 in holding that he did not have any severe impairments during the relevant period and erred by giving significant weight to the assessments of the non-examining physician reviewers.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ's non-disability finding is supported by substantial evidence and must be affirmed.

## III.  THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  <u>Ortiz v. Sec'y of Health and Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); <u>Rodriguez v. Sec'y of Health and Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  <u>Rodriguez Pagan v. Sec'y of Health and Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987); <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  <u>Frustaglia v. Sec'y of Health and Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  <u>Nguyen v. Chater</u>, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); <u>accord</u> <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001) <u>citing</u>, <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  <u>Seavey</u>, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  <u>Id.</u>; <u>accord</u> <u>Brenem v. Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980)

(remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The

court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a

treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.    Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists

if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

### D.    The Five-step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past

work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

### E.      Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be

met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including

pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)     The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)     Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)     Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)     Treatment, other than medication, for relief of pain;

(5)     Functional restrictions; and

(6)     The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## 2.     Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.     APPLICATION AND ANALYSIS

Plaintiff was sixty-one years old on the date of the ALJ's decision. (Tr. 19). He completed the seventh grade (Tr. 140) and has worked in the relevant past as a delivery driver, gardener and owner of a garden center. (Tr. 34-35, 134, 140). Plaintiff alleges disability due to neck, back and stomach issues, as well as a right hand condition. (Tr. 133).

On February 27, 2006, Plaintiff presented to the emergency room complaining of chest and hiatal hernia pain. (Tr. 172). On examination, the attending physician found that Plaintiff was in no acute distress, his extremities were not tender with normal range of motion, there was no calf tenderness or motor or sensory deficits, and his EKG revealed a normal sinus rhythm. (Tr. 174). On August 8, 2006, Plaintiff underwent a laparoscopic repair of his ventral hernia with mesh. (Tr. 169-170). Plaintiff underwent an abdominal and a pelvic CT scan on November 20, 2006, and the tests revealed severe enlarged lymph nodes that were high in the left inguinal canal and within the anterior pelvis. (Tr. 227).

On December 28, 2006, Plaintiff presented to the emergency room complaining of chest pain. (Tr. 175). The attending physician observed that Plaintiff was in no acute distress, his extremities were not tender with normal range of motion, there was no calf tenderness or motor or sensory

deficits, and his EKG revealed a normal sinus rhythm. (Tr. 177). Plaintiff had a whole body scan on February 20, 2007, and the test revealed possible degenerative changes in his lower cervical spine, right AC joint, right medial femoral condyle, and right ankle. (Tr. 264).

On April 23, 2007, Dr. Quirk noted that Plaintiff had decided not to proceed with the resection of his mesh. (Tr. 209). The doctor then observed that Plaintiff was in no acute distress, there was no abdominal tenderness or gross abnormalities in his extremities, his judgment and insight were within normal limits, and there was no evidence of depression, anxiety or agitation. (Tr. 210). Dr. Quirk concluded that Plaintiff's reflux was asymptomatic without the use of medication. Id.

Plaintiff saw Dr. Quirk on September 6, 2007 and reported that, after a long motorcycle ride, he developed severe pain in his left lower quadrant the day before. (Tr. 207). Dr. Quirk advised Plaintiff to go to the emergency room, and Plaintiff declined. Id. Plaintiff also reported that there had been gradual improvement in his condition over the past twelve to fourteen hours. Id. During that same visit, Dr. Quirk observed that Plaintiff was in no acute distress, he was mildly tender over his left inguinal ligament, there was a small left inguinal hernia, his judgment and insight were within normal limits, and there was no evidence of depression, anxiety or agitation. (Tr. 208). The same date, Plaintiff underwent an abdominal CT scan, which was stable (Tr. 225), and a pelvis CT scan, which demonstrated prominent diverticulosis of the colon. (Tr. 226).

On October 10, 2007, Dr. Quirk noted that Plaintiff's colonoscopy revealed diverticular disease, but his GI function was fine. (Tr. 205). On examination, the doctor found that Plaintiff was in no acute distress, he had no tenderness or masses in his abdomen, his judgment and insight were within normal limits, and there was no evidence of depression, anxiety or agitation. (Tr. 206). Dr. Quirk concluded that Plaintiff's reflux was asymptomatic. Id.

On December 26, 2007, Dr. Quirk noted that Plaintiff had been doing well until a few days earlier, when he developed increased abdominal distention and upper abdominal pain. (Tr. 203). The doctor then determined that Plaintiff was in no acute distress, had no tenderness or masses in his abdomen, his judgment and insight were within normal limits, and there was no evidence of depression, anxiety or agitation. (Tr. 204). Dr. Quirk determined that Plaintiff's reflux was stable and under good control, his abdominal pain was stable with some improvement, and his diverticulosis was stable and asymptomatic. Id.

Plaintiff presented to the emergency room on January 1, 2008, complaining of chest pain. (Tr. 261). On examination, the attending physician observed that while Plaintiff's abdomen was tender, he was in no acute distress, his chest was not tender, his heart rate and rhythm were regular, his extremities were not tender with normal range of motion, he had no motor or sensory deficits, pedal edema, or calf tenderness, he was oriented to three spheres, and his mood and affect were normal. (Tr. 262). Plaintiff also had a chest x-ray taken, which revealed no acute cardiopulmonary pathology. (Tr. 263).

On January 2, 2008, Dr. Manzo noted that Plaintiff had been "sanding a pair of handlebars," and had twenty minutes of chest pain the previous day. (Tr. 189). Dr. Manzo then found that while Plaintiff's chest was tender, he looked well, his heart rate and rhythm were regular, and his lungs were clear to auscultation. Id. The doctor concluded that he did not believe that Plaintiff's symptoms were cardiac. Id.

On January 30, 2008, Dr. Quirk determined that Plaintiff was in no acute distress, his judgment and insight were within normal limits, and there was no evidence of depression, anxiety or agitation. (Tr. 202). Dr. Quirk concluded that Plaintiff's diverticulosis was stable, and his

abdominal pain was unspecified. Id. Five weeks later, the doctor noted that Plaintiff's abdominal symptoms had been relatively stable. (Tr. 199). The doctor then observed that Plaintiff was in no acute distress, his neck motion was normal, his sensory and motor function were intact, and he was alert and oriented to three spheres. (Tr. 200). Dr. Quirk determined that Plaintiff's abdominal pain was stable, and his diverticulosis and reflux were stable and asymptomatic. Id.

In addition, Plaintiff's medical records were reviewed by two state agency physicians, Doctors Georgy and Callaghan, who concluded that there was insufficient evidence of disability during the relevant time period. (Tr. 237, 242).

## A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 2. Although the ALJ found that Plaintiff's neck issues, back issues, hernia, diverticulosis and reflux were medically determinable impairments, she determined that they did not, singly or in combination, significantly limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months and thus were not "severe" impairments within the meaning of 20 C.F.R. § 404.1521. (Tr. 11). Accordingly, the ALJ concluded that Plaintiff was not disabled from April 1, 2005, the alleged onset date, through June 30, 2008, the date last insured, i.e., the relevant period. (Tr. 15).

## B.    Plaintiff Has Not Shown Any Error in the ALJ's Step 2 Determination

The ALJ determined at Step 2 that Plaintiff was not entitled to disability benefits because his various impairments were not "severe" within the meaning of 20 C.F.R. § 404.1520 during the relevant period, i.e., the period from his alleged disability onset date – April 1, 2005, through his date last insured – June 30, 2008.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In her Step 2 analysis, the ALJ thoroughly discussed each of Plaintiff's impairments in the context of the record as a whole and concluded that there was insufficient evidence presented establishing that Plaintiff suffered a "severe" impairment during the relevant period. (Tr. 12-15).

An ALJ may properly base her Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). (emphasis added). See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that he had a "medically determinable" physical or mental impairment(s) that significantly limited his ability to do basic work activity at the relevant time, i.e., between April 1, 2005 and June 30, 2008. Id. The ALJ found that Plaintiff did not meet that burden, and Plaintiff has shown no error in her finding.

As noted above, the ALJ thoroughly discussed and considered the medical evidence of record. (Tr. 11-15). In addition, she properly exercised her discretion to give "significant probative weight" to the opinions of the consulting physicians who reviewed the medical records and found no evidence of severe physical or mental impairments prior to June 30, 2008. (Tr. 14). In particular, on May 26, 2009, Dr. Youssef Georgy, a medical consultant, reviewed the evidence of record and found Plaintiff's physical impairments to be non-severe. (Tr. 237). Dr. Georgy noted that Plaintiff had alleged problems with his neck, back, hand and fingers but found insufficient evidence of any functionally significant medically determinable impairment(s) during the relevant period. Id.

Similarly, on December 14, 2009, Dr. Joseph Callaghan, a second medical consultant, found that the medical evidence of record was insufficient to determine severity prior to June 30, 2008. (Tr. 242). He noted the lack of any "good physical exam re RT hand, back pain or neck pain allegations and ventral hernia was repaired successfully." Id. He also observed that Plaintiff's GERD and diverticulosis were "non-limiting." Id.

In her decision, the ALJ found the opinions of Doctors Georgy and Callaghan to be reasonable and supported by the record, and thus she accorded significant probative value to them, as is her prerogative. (Tr. 14). The ALJ also relied upon the expert opinion of Dr. Fuchs, a Board certified orthopedic surgeon, who reviewed the medical evidence of record and testified at the administrative hearing. (Tr. 29-34). Dr. Fuchs testified that the record was lacking as to a "good objective orthopedic examination" during the relevant period. (Tr. 29). Further, the ALJ accurately observed that "there is no opinion from any of [Plaintiff's] treating or examining sources, particularly prior to his date last insured." (Tr. 14). Finally, the ALJ did not find Plaintiff's testimony regarding his pain and limitations to be credible, and Plaintiff has not challenged this finding. (Tr. 15).

As to credibility, the ALJ noted that Plaintiff testified in early 2011 that he had not worked on motorcycles for two and one-half to three years. (Tr. 27). However, the ALJ accurately noted that Plaintiff's testimony is contradicted by the medical records. In particular, Doctor Das reported on December 4, 2009 (after the date last insured) that Plaintiff "is a motorcycle builder" (Tr. 244) and Doctor Ottiano reported on December 29, 2009 that Plaintiff "works as a motorcycle builder." (Tr. 246). Plaintiff also misrepresented his criminal history to the ALJ. Plaintiff testified as to hurting his back in prison and told the ALJ that he was in jail for "cultivation," i.e., "growing marijuana" and testified that he had "six plants." (Tr. 23). However, this Court's records indicate that Plaintiff was actually convicted of possession with intent to distribute over fifty kilograms of marijuana, unlawful possession of Class B explosives by a previously-convicted felon and perpetrating a fraud on the electric company. (See United States v. Giusti, CR No. 02-90T). While six marijuana plants may have been among the items seized from Plaintiff, such plants were not the actual reason Plaintiff was charged, convicted and incarcerated for forty-one months. Id. Thus, Plaintiff did not truthfully answer the ALJ's question about his criminal history which further supports his lack of credibility.

Finally, Plaintiff contends that the ALJ erred by relying on the medical consultants' assessments. According to Plaintiff, since new and material evidence was entered into the record after Doctors Georgy and Callaghan provided their assessments, their opinions do not constitute substantial evidence that he was not disabled. Plaintiff's argument is not convincing for several reasons. First, the medical records Plaintiff alleges constitute new and material evidence did not pertain to the relevant time period: they are 1990 records from St. Joseph Hospital and 2003 records from Miriam Hospital. Further, the records that report Plaintiff received two epidural steroid injections over a three-year period fail to contradict the non-examining physicians' assessment that

his impairments were not severe. In any event, Dr. Fuchs, the medical expert, subsequently reviewed the entire medical record and he still concluded that there was no objective medical evidence supporting Plaintiff's complaints of pain. (See Tr. 32-34). In addition to Dr. Fuchs' subsequent review of the record and expert testimony before the ALJ, "[t]he fact that the state agency physician did not have access to the entire evidentiary record – because the record was incomplete at the time of assessment – is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination." Thacker v. Astrue, C.A. No. 3:11CV246, 2011 WL 7154218 at *6 (W.D.N.C. Nov. 28, 2011).

Moreover, Plaintiff's reliance on the First Circuit's per curiam opinion in Alcantara v. Astrue, No. 07-1056, 2007 WL 4328148 (1st Cir. Dec. 12, 2007), is misplaced. In Alcantara, the First Circuit remanded where the ALJ relied "primarily" on the opinion of one non-examining consultant and discounted the opinions of two other non-examining consultants, a treating psychiatrist and a therapist. Id. at *1. The First Circuit found error because the preferred consultant's opinion was both based on a "significantly incomplete record" and was "not well justified." Id. (citing 20 C.F.R. § 416.927(d)). It also found fault with the ALJ's unsupported statement that the record underwent "no material change" after the preferred consultant's opinion was rendered when in fact there was evidence of a subsequent material deterioration of Plaintiff's mental health. Id. Here, however, the non-examining physicians explained and supported their findings (Tr. 237, 242) and their opinions pertained to the relevant time period. There is no evidence that Plaintiff's condition deteriorated after the medical consultants' assessments were performed in May and December 2009 and any such deterioration would be of limited relevance given the expiration of insured status on June 30, 2008. (Tr. 9). Further, the ALJ did not exclusively rely on the medical consultants' opinions in determining

the severity of Plaintiff's impairments. The ALJ also discussed Plaintiff's hearing testimony and the medical records regarding Plaintiff's 1990 and 2003 back and neck surgeries, his 2005 injections, his treatment with Dr. Quirk, his hernia repair, his need for medication, his emergency room visit for chest pain and the testimony of the medical expert. (Tr. 12-15). See Jones v. Astrue, No. 09-206S, 2010 WL 2326263, at *1 (D.R.I. June 2, 2010) and Gomes v. Astrue, No. 08-233, 2009 WL 4015595, at *2 n.l (D.R.I. Nov. 19, 2009).

The bottom line is that Plaintiff has not shown that the ALJ committed any Step 2 error or that the administrative record supports a finding that his impairments significantly affected his ability to engage in basic work functions during the relevant period. Thus, Plaintiff has not established any legal basis for reversing the ALJ's decision denying DIB, and I recommend that Defendant's Motion to Affirm (Document No. 9) be GRANTED.

**Conclusion**

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 9) be GRANTED and that Plaintiff's Motion to Reverse Without or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be DENIED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-

Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


  /s/  Lincoln D. Almond     
LINCOLN D. ALMOND
United States Magistrate Judge
August 22, 2012